**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 26-1178**

---

**METROPOLITAN GOVERNMENT OF NASHVILLE**
**AND DAVIDSON COUNTY, TENNESSEE,**

*Petitioner,*

v.

**FEDERAL AVIATION ADMINISTRATION AND BRYAN BEDFORD,**
**AS ADMINISTRATOR OF THE FAA, IN HIS OFFICIAL CAPACITY,**

*Respondents.*

---

**PETITIONER METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY'S EMERGENCY MOTION FOR INJUNCTION PENDING REVIEW, OR IN THE ALTERNATIVE, FOR STAY OF AGENCY ACTION PENDING REVIEW**

M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone: (202) 552-2388
Email: rgoldberg@clarkhill.com
COUNSEL FOR PETITIONER
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY

Dated: July 2, 2026

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure and Circuit Rule 26.1(a), Petitioner Metropolitan Government of Nashville and Davidson County, Tennessee, states that it is a governmental entity.

## I. CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

### A. Parties.

The parties in this case are the Petitioner Metropolitan Government of Nashville and Davidson County, Tennessee, the Federal Aviation Administration, and its Administrator, Bryan Bedford, who is named solely in his official capacity.

### B. Ruling under Review.

The Petition for Review challenges the failure of the Respondent FAA to comply with its statutory obligations under Section 757 of the FAA Reauthorization Act of 2024 ("Section 757"), which is set forth in the Addendum to this Emergency Motion for Stay. Petitioner appointed the Board of Commissioners for the Metropolitan Nashville Airport Authority ("MNAA" or "Authority"), which is the federal "sponsor" of Nashville International Airport ("BNA") and John C. Tune Airport ("JWN") (collectively, the "Nashville Airports"). The State of Tennessee ("State") passed a law intended to displace the Petitioner's selected Board Members and replace them with new Board Members chosen by the State. Pursuant to the clear language of Section 757, FAA is prohibited from allowing the new Board to take power at least until the termination of litigation between the Petitioner and the State

which is now pending in the U.S. District Court for the Middle District of Tennessee. Despite the clear statutory mandates in Section 757, FAA has failed to:

(1) Formally recognize and process the State's action as a disputed change under Section 757;

(2) Exercise its exclusive approval authority;

(3) Make the independent determinations required by Section 757(c); or

(4) Take action to ensure that an unlawful governance change does not proceed.

The lack of an FAA decision in response to Metro Nashville's repeated requests for FAA to comply with Section 757 does not preclude judicial review of the agency's failure to act. Courts can ensure that statutory rights are not denied by agency inaction, under both general equitable powers and powers granted under the APA. And a clear refusal by a federal agency to act can constitute a final order under the circumstances, especially where, as here, an answer to the question was promised but not provided. Moreover, regardless of the number of days, an agency delay is unreasonable and contrary to 5 U.S.C. § 701(6) where, as here, Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute.

**C. Related Case.**

This Petition for Review proceeding is related to a case pending in the United States District Court for the Middle District of Tennessee: *Metro. Gov't of Nashville*

*and Davidson County and Metro. Nashville Airport Authority v. Lee*, Case No. 3:26-cv-00793 (M.D. Tenn.) (Campbell, J.)

# TABLE OF CONTENTS


RULE 26.1 DISCLOSURE STATEMENT ............................................. i

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ................................................................................. i

I. INTRODUCTION ........................................................................2

II. STATUTORY BACKGROUND ....................................................3

III. STATEMENT OF FACTS ...........................................................4

A. Section 757 Applies and Confers Exclusive Authority on FAA. .........4

B. FAA Has Mandatory Duties It Has Not Performed. ............................6

C. The May 20, 2026 Letter to FAA .......................................................6

D. Pending Litigation in Tennessee Regarding the State's Attempted Takeover of MNAA ..........................................................7

E. Petitioner's June 28, 2026 Letter to FAA ...........................................8

F. Petitioner's Motion for Administrative Stay .......................................8

G. The State Has Appointed Six New MNAA Board Commissioners ..........................................................................9

IV. STANDING OF PETITIONER .........................................................9

V. APPLICABLE LEGAL STANDARD ...............................................10

VI. ARGUMENT ..................................................................................11

A. There is a Strong Likelihood that the Court Will Conclude that Section 757 Clearly Prohibits FAA Approval of the State-Compelled Change in Governance at this Time. ...............................11

B. Metro Nasvhille Will Suffer Irreparable Harm if the Injunction or Stay is Not Issued..........................................................................14

C. There Would Be No Countervailing Harm to Other Parties If the Injunction or Stay Is Issued. .........................................................19

D. The Public Interest Would Benefit from this Motion being Granted. ..........................................................................................19

VII. CONCLUSION......................................................................................19

ADDENDUM ...........................................................................................................21

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS……..23

CERTICATE OF TELEPHONIC NOTICE PURSUANT TO CIRCUIT RULE 27(a) ……………………………………………………………………………24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cuomo v. United States Nuclear Regulatory Comm'n*,
772 F.2d 972 (D.C. Cir.1985) ........ 11

*McCammon v. United States*,
588 F. Supp. 2d 43 (D.D.C. 2008) ........ 10

*Metro. Gov't of Nashville and Davidson County and Metro. Nashville Airport Authority v. Lee*,
Case No. 3:26-cv-00793 (M.D. Tenn.) (Campbell, J.) ........ 1

*PCHRG v. FDA*,
740 F.2d 21 (D.C. Cir. 1984) ........ 13, 14

*Resolution Trust Corp. v. Burke*,
874 F. Supp. 23 (D.D.C.1995) ........ 10

*Seatrain Intern., S.A. v. Federal Maritime Commission*,
598 F.2d 289 (D.C. Cir. 1979) ........ 13

*Estate of Smith v. Heckler*,
747 F.2d 583 (10th Cir. 1984) ........ 14

*Telecomm. Research and Action Center ("TRAC") v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ........ 13

*United States Institute of Peace v. Jackson*,
783 F. Supp. 3d 316 (D.D.C. May 19, 2025) ........ 17, 18

*United States v. Philip Morris USA, Inc.*,
449 F. Supp. 2d 988 (D.D.C. 2006) ........ 10

**Statutes**

All Writs Act, 28 U.S.C. § 1651 ........ 1, 10, 20

5 U.S.C. § 701(6) ........ 13

5 U.S.C. § 706(1) ....................................................................................12

49 U.S.C. § 46110 ....................................................................................14

49 U.S.C. § 47107 ......................................................................................4

FAA Reauthorization Act of 2024 § 757.... 1, 2, 3, 4, 5, 6, 7, 8, 9, 20, 22, 23, 24, 15

FAA Reauthorization Act of 2024 § 757(a) ..................................................2, 6

FAA Reauthorization Act of 2024 § 757(b)(1) ........................................6, 4, 14

FAA Reauthorization Act of 2024 § 757(c) .....................................2, 6, 12, 14

FAA Reauthorization Act of 2024 § 757(d) ......................................................5

**Other Authorities**

Federal Rules of Appellate Procedure Rule 18........................................1, 10, 20

## I. <u>INTRODUCTION</u>

Pursuant to Rule 18, Federal Rules of Appellate Procedure, and D.C. Circuit Rule 18, and the All Writs Act, 28 U.S.C. § 1651, and the equitable powers of this Court, Petitioner Metropolitan Government of Nashville and Davidson County, Tennessee ("Petitioner" or "Metro Nashville"), moves for an emergency injunction or a stay, to prevent the Respondent Federal Aviation Administration ("FAA") from approving the unlawful transfer of the leadership and governance of the appointed board that leads, governs and controls the Nashville Metropolitan Airport Authority ("MNAA" or "Authority"), which in turn is the federal "sponsor" of Nashville International Airport ("BNA") and John C. Tune Airport ("JWN") (collectively, the "Nashville Airports"). **Undersigned counsel spoke by telephone with DOJ Counsel Joshua M. Koppel this morning regarding this Emergency Motion being filed to ascertain if the government would consent to the relief sought but consent was not given.**

On June 30, 2026, the State of Tennessee ("State") appointed a competing slate of Authority Board Commissioners to replace those lawfully appointed by Petitioner, and the State claims that effective July 1, 2026, its slate of Commissioners is the lawful leadership of the Authority. The dispute between Petitioner and the State is now pending before the U.S. District Court for the Middle District of Tennessee. *Metro. Gov't of Nashville and Davidson County and Metro. Nashville*

*Airport Authority v. Lee*, Case No. 3:26-cv-00793 (M.D. Tenn.) (Campbell, J.) (the "Airport Dispute Federal Court District Litigation"). Congress anticipated this type of standoff between competing state and local officials, and provided for it to be addressed in Section 757 of the FAA Reauthorization Act of 2024, Public Law 118-63 ("Section 757") (The full text is provided in the addendum hereto.) Section 757 gives clear and unambiguous guidance as to how FAA needs to react to the situation presented here because of the State's effort to wrest control of the Airports from Petitioner. Section 757 imposes multiple mandatory ("shall") duties on FAA:

First, FAA must exercise its sole legal authority under Section 757(a) to determine whether any change in the governance of, or operational responsibility for, the Airport sponsor may proceed.

Second, pursuant to Section 757(b)(1), FAA "shall not approve" any disputed change unless one of three conditions is satisfied: (1) written consent of the airport sponsor; (2) a final, non-reviewable judicial decision; or (3) a legally binding agreement between the parties; and none of these conditions exists here.

Third, under Section 757(c), FAA "shall independently determine": (1) whether any proposed sponsor/operator can comply with federal requirements; and (2) whether the proposed change is consistent with (a) federal law; (b) FAA regulations; (c) Grant assurances; and (d) federal land conveyance obligations.

Unfortunately, FAA has inexplicably refused to abide by Congress' clear instructions in Section 757, and has refused to take action to preclude the irreparable harm that is now taking place at the Nashville Airports because of the unchecked battle between competing groups of Airport Authority Boards of Commissioners.

The State has already selected its chosen competing Board of Commissioners, and they have announced a Special Meeting of the Board to occur this Monday, July 6, 2026. A stay issued by this Court can help ensure that the FAA does not play a role that could lead to the utter confusion that would result if the new Board believed it was empowered by the FAA to displace the existing Board of Commissioners.

Petitioner seeks an order prohibiting the Respondent FAA from approving, recognizing, or otherwise giving effect to the State of Tennessee's attempted transfer of governance, sponsorship, ownership, or operational responsibility for the Nashville Airports until after this Court has ruled on whether FAA has failed to comply with Congress' express directives in Section 757.

## II. STATUTORY BACKGROUND

Section 757 of the FAA Reauthorization Act of 2024 (Addendum hereto) requires the FAA to take affirmative steps to ensure that it does not accept or facilitate the transfer of airport governance while specified litigation is pending. The statute imposes a nondiscretionary obligation: the FAA must state that it will not accept such a transfer prior to the conclusion of the litigation.

## III. <u>STATEMENT OF FACTS</u>

Metro Nashville established the MNAA, which owns and operates BNA and JWN. The MNAA is recognized by the FAA as the sponsor of BNA and JWN, subject to FAA regulation, including, without limitation, the "Grant Assurance" obligations that a federal-funded airport sponsor must follow, pursuant to 49 U.S.C. § 47107. BNA is the largest airport in Tennessee. Handling more passenger arrivals and departures than all other airports in the state combined, it serves nearly 25 million travelers annually. JWN is the largest general aviation airport in the State.

In 2026, the State of Tennessee enacted legislation purporting to:

- Replace the existing MNAA board with a State-appointed board; and
- Transfer governance and operational control of the Airports.

However, Section 757(b)(1) of the FAA Reauthorization Act of 2024 provides that the FAA **"shall not approve"** a disputed change in airport sponsorship during the pendency of litigation unless certain conditions are met. Those conditions are not satisfied here.

### A. <u>Section 757 Applies and Confers Exclusive Authority on FAA.</u>

Section 757 expressly provides that (1) in the case of a "disputed change of airport sponsorship," the FAA Administrator "shall have the sole legal authority to approve any change" in sponsorship or operational responsibility; and (2) a "disputed change" includes any State legislative action affecting governance or operations where the airport sponsor does not consent.

The State of Tennessee enacted legislation that would alter the governance and operational control of MNAA, and Metro Nashville and MNAA, the airport sponsor of record, have expressly withheld consent. Accordingly, the State's action constitutes a "disputed change of airport sponsorship" within the meaning of Section 757(d).

The State has attempted to assert that there is no "disputed change of airport sponsorship" because technically MNAA would remain as the name of the Airport sponsor as of July 1, 2026, and thereafter. However, this argument is specious on its face as it fails to reflect the actual language of Section 757(d), which states:

> (d) DEFINITION OF DISPUTED CHANGE OF AIRPORT SPONSORSHIP. – In this section, the term "disputed change of airport sponsorship" means any action that seeks to change the ownership, sponsorship, **or governance of, or operational responsibility for**, a federally obligated, publicly owned airport, including any such change directed by judicial action or State or local legislative action, where the airport sponsor of record initially does not consent to such change.

(Emphasis added) (*see* Addendum) Thus, the name of the "sponsor" can remain the same but the requirements and prohibitions of Section 757 apply to an attempt to change the "governance of" or "operational responsibility for" a federally funded airport such as BNA. By imposing its own board that can be fired at will without cause, the State and its new legislation are undeniably changing the "governance of" and "operational responsibility for" the Airport. This means that FAA is required to comply with Congress' clear directives in Section 757 at this time.

### B. FAA Has Mandatory Duties It Has Not Performed.

Section 757 imposes multiple mandatory ("shall") duties on FAA:

First, FAA must exercise its sole legal authority under Section 757(a) to determine whether any change in the governance of, or operational responsibility for, the Airport sponsor may proceed.

Second, pursuant to Section 757(b)(1) FAA "shall not approve" any disputed change unless one of three conditions is satisfied: (1) written consent of the airport sponsor; (2) a final, non-reviewable judicial decision; or (3) a legally binding agreement between the parties; and none of these conditions exists here.

Third, under Section 757(c), FAA "shall independently determine": (1) whether any proposed sponsor/operator can comply with federal requirements; and (2) whether the proposed change is consistent with (a) federal law; (b) FAA regulations; (c) Grant assurances; and (d) federal land conveyance obligations.

### C. The May 20, 2026 Letter to FAA

On May 20, 2026, Metro Nashville emailed FAA's Chief Counsel a letter which informed FAA that Metro Nashville "disputes the change in both governance and ownership of the [Authority] as a result of the recently enacted HB2507/SB2473 (as amended) (the '2026 Act')," pursuant to which "on July 1, 2026, the current MNAA Board of Commissioners, all of whom were chosen by Metro Nashville's

Mayor and approved by its Metropolitan Council, will be dissolved and replaced by a board controlled by the State of Tennessee." **Exhibit 1** hereto.

The letter requested that FAA "notify the Chair of the MNAA Board of Commissioners, Nancy Sullivan, P.E., that the governance and operational responsibility of the MNAA shall not change until there is compliance with § 757 . . ., and that the FAA will continue to recognize the current MNAA board pending resolution of the disputed change of airport sponsorship."

FAA did not substantively respond to the May 20 letter. Nor has FAA stated that it will comply with Section 757. On May 29, 2026, the Assistant Chief Counsel for Airports and Environmental Law, Krystyna Bednarczyk, stated in an email to Metro Nashville that FAA was "finalizing" its position in response to the May 20 letter, and "expect[ed] to issue a letter shortly," and would "follow up next week with a status update." But no such follow up has occurred in the ensuing month.

### D. <u>Pending Litigation in Tennessee Regarding the State's Attempted Takeover of MNAA</u>

As set forth above, the Airport Dispute Federal District Court Litigation is pending in the Middle District of Tennessee. Plaintiffs there seek: (1) a declaratory judgment that State Officer Defendants cannot implement the 2026 Act in any way until such time that all legal prerequisites of Section 757 of the FAA Reauthorization Act of 2024 have been satisfied; and (2) a temporary and permanent injunction preventing defendants Governor Lee, Speaker McNally, and Speaker Sexton from

implementing the 2026 Act in any way until such time that all requirements under Section 757 have been satisfied.

### E. Petitioner's June 28, 2026 Letter to FAA

On June 28, 2026, counsel for Metro Nashville sent the Respondent FAA Administrator and several top FAA officials a letter which reiterated why FAA is foreclosed from approving the transfer and requested that FAA state it would comply with Section 757. **Exhibit 2** hereto. FAA did not respond, maintaining its silence since May 20 despite repeated requests for assurance by Metro Nashville.

### F. Petitioner's Motion for Administrative Stay

On June 29, 2026, Metro Nashville emailed the FAA Chief Counsel and Associate Administrator for Airports a Motion for Administrative Stay, requesting that FAA agree not to recognize the State-appointed board members as legitimate members of the MNAA board authorized to assume operational responsibility for the Airports at least until one of the following occurs:

1) A final non-appealable judgment is issued in the BNA Dispute Federal Court District Litigation; or

2) A final, non-appealable judgment is issued by the U.S. Court of Appeals for the D.C. Circuit that the FAA has not violated its obligations under Section 757.

**Exhibit 3** hereto, at 4. Because of the impending July 1, 2026 effective date of the State legislation, Metro Nashville requested that FAA respond by close of business

on June 30, 2026. Yet FAA did not respond, continuing yet again to be silent in the face of Petitioner's request for assurance that FAA will comply with Section 757.

### G. The State Has Appointed Six New MNAA Board Commissioners

On June 30, 2026, State officials affected the change in governance of, and operational responsibility for, the federal airport sponsor MNAA by appointing six new Commissioners to the newly expanded nine-member Board, effective as of July 1, 2026. Of the six newly appointed Commissioners: two were appointed by Tennessee Governor Bill Lee, two by the Speaker of the Tennessee Senate and two by the Speaker of the Tennessee House. Declaration of D. Kirk Shaffer ("Shaffer Decl."), **Exhibit 4** hereto, ¶ 19. Even following the State's appointment of the six new MNAA Board Commissioners, FAA continued its inexplicable pattern of complete silence in utter defiance of its Congressionally-mandated responsibilities.

Even more recently, the new Board of Commissioners appointed by the State have announced a Special Meeting of the new (competing) Board to occur Monday July 6, 2026. *Id.*; *see also* the Agenda at Exhibit 5 hereto (meeting at 8:00 a Central).

## IV. STANDING OF PETITIONER

Petitioner has standing to pursue its Petition for Review because it is directly and negatively impacted by the FAA's refusal to comply with its obligations under Section 757. As a result of FAA's noncompliance with the law, Metro Nashville now stands to lose its long-held right to nominate and confirm the MNAA Board of

Commissioners in whom is vested all power of MNAA under Tennessee Code Title 42. Such noncompliance by FAA will result in Petitioner losing its right to nominate and confirm the MNAA Board of Commissioners. Had FAA simply followed its statutory obligations under Section 757, Metro Nashville would not be losing that right.

## V. APPLICABLE LEGAL STANDARD

A party who moves for an injunction under the All Writs Act, 28 U.S.C. § 1651, or stay pending appeal under Rule 18, bears the burden of showing the balance of four factors weigh in favor of the stay/injunction: (1) the likelihood that the party will prevail on the merits of the appeal; (2) the likelihood that the party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting a stay. *United States v. Philip Morris USA, Inc.,* 449 F. Supp. 2d 988, 990 (D.D.C. 2006) (delineating factors to be considered in determining whether stay pending appeal is warranted) (citing *Cuomo v. United States Nuclear Regulatory Comm'n,* 772 F.2d 972, 974 (D.C. Cir.1985)); *Resolution Trust Corp. v. Burke,* 874 F. Supp. 23, 25 (D.D.C.1995) (evaluating motion to stay enforcement of subpoenas pending appeal under same four-factor test). A party does not necessarily have to make a strong showing with respect to the first factor (likelihood of success on the merits) if a strong showing is made as to the second factor (likelihood of irreparable harm.

*McCammon v. United States*, 588 F. Supp. 2d 43, 47 (D.D.C. 2008), and *vice versa*; *see Cuomo,* 772 F.2d at 73 ("[p]robability of success is inversely proportional to the degree of irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or *vice versa*).

## VI. ARGUMENT

Given the fact that Section 757 clearly instructs FAA not to approve of the State's attempted takeover of the Airport Board at least until the pending litigation has terminated, it is beyond any reasonable doubt that the FAA must be ordered not to approve the new Board of Commissioners at this time. All the requirements for an emergency injunction or stay are met here.

### A. There is a Strong Likelihood that the Court Will Conclude that Section 757 Clearly Prohibits FAA Approval of the State-Compelled Change in Governance at this Time.

There is a strong likelihood that Metro Nashville will succeed on the merits of its claim before this Court that FAA will have violated Section 757 if it approves the State-appointed Board Commissioners to replace the current Board Commissioners while the Airport Dispute Federal District Litigation remains pending. Because Section 757(b)(1) imposes a mandatory prohibition, and no exception applies, Metro Nashville's likelihood of success is not merely strong—it is overwhelming. The law forbids what the State urges, and only an emergency stay will ensure the FAA complies with that mandate.

Despite the clear statutory mandates in Section 757, FAA has failed to:

(1) Formally recognize and process the State's action as a disputed change under Section 757;

(2) Exercise its exclusive approval authority;

(3) Make the independent determinations required by Section 757(c); or

(4) Take action to ensure that an unlawful governance change does not proceed.

Because Section 757 repeatedly uses mandatory language ("shall"), FAA's obligations are nondiscretionary. Its failure to act therefore constitutes agency action unlawfully withheld under 5 U.S.C. § 706(1) (the "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed"). In short, FAA's refusal to state its compliance with Section 757 constitutes agency action "unlawfully withheld" and "unreasonably delayed."

Even if FAA asserts discretion as to timing (which Metro Nashville does not concede), the delay is independently unlawful given: (1) the active implementation of State legislation; (2) the statutory exclusivity of FAA approval authority; (3) the risk that a governance change could occur without federal authorization; and (4) the resulting irreparable harm to federal aviation interests and grant compliance.

Section 757 establishes a federal gatekeeping regime: (1) no disputed governance change may occur without FAA involvement; and (2) the State cannot lawfully bypass FAA's exclusive authority. FAA's failure to act therefore risks: (1) allowing an unauthorized and federally noncompliant change to occur; (2)

undermining federal oversight of federally obligated airports; and (3) jeopardizing compliance with grant assurances and federal funding conditions.

The lack of an FAA decision in response to Metro Nashville's request does not preclude judicial review of the agency's failure to act. Courts can insure that statutory rights are not denied by agency inaction, under both general equitable powers and powers granted under the APA. *Seatrain Intern., S.A. v. Federal Maritime Commission*, 598 F.2d 289 (D.C. Cir. 1979). "It is obvious that the benefits of agency expertise and creation of a record will not be realized if the agency never takes action." *Telecomm. Research and Action Center ("TRAC") v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984); *see id.* ("there is no doubt that this court has present jurisdiction to hear claims concerning nonfinal agency action (or inaction)"). And a clear refusal by a federal agency to act can constitute a final order under the circumstances, especially where, as here, an answer to the question was promised but not provided.

Moreover, regardless of the number of days, an agency delay is unreasonable and contrary to 5 U.S.C. § 701(6) where, as here, "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80); *PCHRG v. FDA*, 740 F.2d 21, 34-35 (D.C. Cir. 1984). The court also must "take into account the nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80; *PCHRG*, 740 F. 2d at 35. In

addition, the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *PCHRG*, 740 F.2d at 34. "If, after studying the statute and its legislative history, the court determines that the defendant official has failed to discharge a duty which Congress intended him to perform, the court *should* compel performance, thus effectuating the congressional purpose." *Estate of Smith v. Heckler,* 747 F.2d 583, 591 (10th Cir. 1984).

Alternatively, if FAA allows the governance of, and operating responsibility for, the Airport to transfer from Metro Nashville to the State of Tennessee, it will constitute a final order under 49 U.S.C. § 46110 that on its face is contrary to the requirements of Section 757 and otherwise arbitrary and capricious, an abuse of discretion and contrary to law. There is no evidence that FAA has satisfied its mandatory requirements in Section 757(b)(1) and (c) before it can approve any such transfer.

**B. Metro Nashville Will Suffer Irreparable Harm if the Injunction or Stay is Not Issued.**

The FAA's allowance of the creation of the competing Board of Commissioners to govern the Airport threatens immediate and irreparable injury because it subjects Airport employees, tenants, airlines, regulators, and the public to conflicting directives from rival governing bodies, casts doubt on the validity of official actions, contracts, and regulatory decisions, and creates precisely the sort of uncertainty in governmental authority that monetary relief cannot remedy.

As set forth in the Shaffer Declaration, the State's improper attempted takeover of the Board of Commissioners, and FAA's refusal to comply with its obligations under Section 757, can only lead to chaos in Nashville as to which entity and personnel speaks for and binds the Airport Board and executives. It will cause an unprecedented confusion among the Airport employees, contractors, airlines, and passengers. A major airport enters into hundreds of contracts involving:

- airlines,
- concessionaires,
- fuel suppliers,
- construction firms,
- security providers,
- maintenance contractors.

Shaffer Decl. ¶ 15. If two competing boards issue conflicting directions, third parties may refuse to act until authority is clarified. The resulting harms may include:

- delayed projects,
- suspended procurement,
- inability to execute contracts, and
- increased borrowing costs. *Id*.

Confusion over who has authority to: (a) execute contracts, (b) oversee construction projects, and (c) interface with federal regulators and airlines can cause airport leadership to be at a standstill with regard to important decisions until the

issue of which entity is the lawful board is decided, and multi-billion-dollar development programs may be delayed or disrupted until contractors and vendors know that they are dealing with the entity that has legal authority to enter into binding contracts, agree to change orders, etc. This is most important for an airport in dealing with the FAA and its serving and prospective air carrier airlines. *Id.* ¶ 16.

Once uncertainty regarding legitimate authority becomes public:

- airlines may hesitate to commit resources,
- investors and bondholders may express concern,
- regulators may increase scrutiny,
- business partners may delay transactions. *Id.* ¶ 17.

Uncertainty as to airport leadership also threatens compliance with grant assurances and FAA safety requirements. There can be chaos caused by not knowing who has the authority to close a runway or shutdown the airport because of a weather or security threat. Confusion and a refusal to act at an operational level are the natural outgrowths of not knowing who is in charge. *Id.* ¶ 18.

The irreparable harm is not merely to the competing claimants for governance authority. The harm also occurs to the continuous, safe, and federally compliant operation of a major commercial airport serving millions of passengers. The existence of competing bodies each claiming to be the lawful sponsor creates immediate uncertainty regarding who may bind the airport, certify compliance to federal authorities, direct safety-critical operations, approve contracts, and manage

emergency responses. Any disruption to those functions threatens public safety, jeopardizes federal obligations and funding, undermines confidence in airport governance. *Id.* ¶ 20.

These harms are immediate and not speculative. FAA reacts conservatively to governance disputes to protect the federal interest in aviation safety and funding integrity. Harm to airport goodwill, financial credibility, and relationships with airlines and investors cannot be readily quantified and is therefore irreparable. *Id.* ¶ 21.

In *United States Institute of Peace v. Jackson*, 783 F. Supp. 3d 316 (D.D.C. 2025), the United States Institute of Peace ("USIP") president and ten members of its board alleged they were unlawfully removed by a President's Executive Order, deeming USIP "unnecessary" and directing removal and reduction of USIP operations and personnel to statutory minimums. The court held that the officials would suffer irreparable harm absent injunctive relief from unlawful removals. The court stated:

> [First], Board members suffer a recognized irreparable harm from the "unlawful removal from office by the President" and "the obviously disruptive effect" that such removal has on the organization's leadership. . . . Plaintiffs have been "deprived of a presidentially appointed and congressionally confirmed position of high importance," eliminating their ability to carry out their congressional mandate in furthering the development of peace studies—which cannot be retroactively cured by money damages.

> Second, plaintiffs and the Institute suffer from a loss of USIP's independence and a harm to its reputation. . . . *Beacon Assocs., Inc. v. Apprio, Inc.*, 308 F. Supp. 3d 277, 288 (D.D.C. 2018) (citing cases for the principle that reputational harm is irreparable absent an injunction). As explained, much of USIP's work is contingent upon relationships of trust and community partnerships around the world that allow USIP to develop insights and promote principles of peaceful conflict resolution.

*Id*. at 377-78.

Similarly here, the FAA's inaction is causing the State to be able to deprive Petitioner of the Board members it duly selected to carry out the work of the Nashville Airports, and the harm to the reputation of the Board caused by the havoc wreaked by the State and FAA cannot be remedied. Only a stay can protect the Petitioner and the public.

This Motion seeks only to preserve the long-standing status quo pending judicial resolution. By contrast, absent immediate relief, the State's takeover will trigger precisely the governance chaos Congress enacted Section 757 to prevent. Moreover, the likelihood of success is so strong here, *i.e.,* that the FAA must comply with Congressional directives in Section 757, that the requirement of demonstrating irreparable harm is less than it otherwise might need to be. Actions taken by an improperly recognized board cannot be easily unwound, particularly in agreements with third parties.

### C. There Would Be No Countervailing Harm to Other Parties If the Injunction or Stay Is Issued.

Maintaining the status quo and not allowing FAA to authorize the State takeover of the Nashville Airports imposes no meaningful burden on FAA, the State, or third parties. The Board of Commissioners that has been in place will continue to govern the Nashville Airports. No harm can be alleged from that status quo.

### D. The Public Interest Would Benefit from the Granting of this Motion.

The public interest will be served by FAA not causing confusion at the Airport and surrounding community by approving the disputed slate of new Board Commissioners. The public interest strongly favors adherence to federal law, regulatory stability, and continuity in the management of a major commercial airport that serves interstate commerce.

BNA is the primary commercial airport serving Middle Tennessee and a critical component of the national aviation system. Disruptions to its governance and federal compliance status threaten (a) air transportation access, (b) regional economic activity, and (c) national aviation system stability. Maintaining continuity of airport governance and compliance with federal obligations is essential to the public interest. Shaffer Decl. ¶ 22.

## VII. CONCLUSION

For the reasons set forth above, Petitioner Metropolitan Government of Nashville and Davidson County, Tennessee respectfully moves the Court:

1. Issue an immediate injunction or stay pending review;

2. Prohibit the FAA from recognizing or approving the State-appointed competing Board of Commissioners; and

3. Maintain the injunction or stay until resolution of Petitioner's claims on the merits.

**Petitioner respectfully asks that the Court grant this emergency relief prior to the Special Board of Commissioners meeting that the State's newly-installed slate of replacement Board of Commissioners has scheduled for July 6, 2026, at 8:00 am, Central Daylight Time. *See* Agenda attached as Exhibit 5 hereto.** (The Commissioners listed on the July 6 Agenda are part of the newly state-appointed MNAA board established effective July 1, 2026.)

Respectfully submitted,

*/s/ M. Roy Goldberg*
M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC[1]
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone: (202) 552-2388
Email: rgoldberg@clarkhill.com

[1]On July 13, 2026, the address of Clark Hill PLC's Washington, D.C. office will move to 601 13th Street, N.W., Suite 600 South, Washington, D.C. 20005.

COUNSEL FOR PETITIONER
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY

Dated: July 2, 2026

# ADDENDUM

## SECTION 757 OF THE FAA REAUTHORIZATION ACT OF 2024

## PUBLIC LAW 118-63

**SEC. 757. DISPUTED CHANGES OF SPONSORSHIP AT FEDERALLY OBLIGATED, PUBLICLY OWNED AIRPORT.**

(a) APPROVAL AUTHORITY.—

(1) IN GENERAL.— Subject to paragraph (2), in the case of a disputed change of airport sponsorship, the Administrator shall have the sole legal authority to approve any change in the sponsorship of, or operational responsibility for, the airport from the airport sponsor of record to another public or private entity.

(2) EXCLUSION.— This section shall not apply to a change of sponsorship or ownership of a privately-owned airport, a transfer under the Airport Investment Partnership Program, a change when the Federal Government exercises a right of reverter, or a change that is not disputed.

(b) CONDITIONS FOR APPROVAL.—

(1) IN GENERAL.— Subject to paragraphs (2) and (3), the Administrator shall not approve any disputed change of airport sponsorship unless the Administrator receives—

(A) written documentation from the airport sponsor of record consenting to the change in sponsorship or operation;

(B) notice of a final, non-reviewable judicial decision requiring such change; or

(C) notice of a legally-binding agreement between the parties involved.

(2) PENDING JUDICIAL REVIEW.— The Administrator may not evaluate or approve a disputed change of airport sponsorship where a legal dispute is pending before a court of competent jurisdiction.

(3) TECHNICAL ASSISTANCE.—

(A) IN GENERAL.— Any State or local legislative body or public agency considering whether to take an action (including by drafting legislation) that would

impact the ownership, sponsorship, governance, or operations of a federally obligated, publicly owned airport may request from the Administrator, at any point in the deliberative process— (i) technical assistance regarding the interrelationship between Federal and State or local requirements applicable to any such action; and (ii) review and comment on such action.

(B) FAILURE TO SEEK TECHNICAL ASSISTANCE.— The Administrator may deny a change in the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated, publicly owned airport if a State or local legislative body or public agency does not seek technical assistance under subparagraph (A) with respect to such change.

(c) FINAL DECISION AUTHORITY.— In addition to the conditions outlined in subsection (b), the Administrator shall independently determine whether the proposed sponsor or operator is able to satisfy Federal requirements for airport sponsorship or operation and shall ensure, by requiring whatever terms and conditions the Administrator determines necessary, that any change in the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated, publicly owned airport is consistent with existing Federal law, regulations, existing grant assurances, and Federal land conveyance obligations.

(d) DEFINITION OF DISPUTED CHANGE OF AIRPORT SPONSOR. In this section, the term ‘‘disputed change of airport sponsorship’’ means any action that seeks to change the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated, publicly owned airport, including any such change directed by judicial action or State or local legislative action, where the airport sponsor of record initially does not consent to such change.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

Pursuant to FRAP 32(g)(1), I hereby certify that this Motion complies with FRAP 27(d)(1)(E) because it was prepared with Times New Roman 14-point font, a proportionally spaced typeface, and the Motion complies with FRAP 27(d)(2) because it contains 4,443 words, according to the word count of Microsoft Word.

Respectfully submitted,

*/s/ M. Roy Goldberg*

M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone: (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner

Dated: July 2, 2026

**CERTICATE OF TELEPHONIC NOTICE PURSUANT TO CIRCUIT RULE 27(a)**

Pursuant to D.C. Circuit Rule 27(a)(1), counsel for Petitioner certifies that on July 2, 2026, at approximately 8.22 am I contacted Joshua M. Koppel, Esq., of the U.S. Department of Justice, Appellate Division, by telephone to provide advance notice of this emergency motion. I informed Attorney Koppel that Petitioner would be filing the emergency motion this morning unless the government would agree to the relief sought in the motion. During the call, Attorney Koppel did not consent to the relief sought by Petitioner.

Respectfully submitted,

*/s/ M. Roy Goldberg*

M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone: (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner

Dated: July 2, 2026

## CERTIFICATE OF SERVICE

Pursuant to Rule 15(c) of the Federal Rules of Appellate Procedure, I hereby certify that I have this 2nd day of July, 2026, caused to be served copies of the foregoing Emergency Motion upon the following persons by email and also filing it with the Court's CM/ECF system:

Steven Myers, Esq.
U.S. DEPARTMENT OF JUSTICE
Email: Steven.A.Myers@usdoj.gov

Josh Koppel, Esq.
U.S. DEPARTMENT OF JUSTICE
Email: Joshua.M.Koppel@usdoj.gov

Jessie DiGregory, Esq.
FEDERAL AVIATION ADMINISTRATION
800 Independence Avenue SW
Washington, D.C. 20591
Email: Jessie.DiGregory@faa.gov

Elizabeth Defay, Esq.
FEDERAL AVIATION ADMINISTRATION
800 Independence Avenue SW
Washington, D.C. 20591
Email: Jordan.E.Defay@faa.gov

*/s/ M. Roy Goldberg*
M. Roy Goldberg, Esq.
D.C. Bar 416953
D.C. Circuit Bar No. 39860
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004

Telephone: (202) 552-2388
Email: rgoldberg@clarkhill.com

Counsel for Petitioner