**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 26-1178**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE,

Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION and BRYAN BEDFORD, as Administrator of the FAA, in his official capacity,

Respondents.

---

On Petition for Review of Agency Action

---

**RESPONDENTS' MOTION TO DISMISS**

---

*Of Counsel:*

GREGORY ZERZAN
*General Counsel*

CHARLES E. ENLOE
*Assistant General Counsel*

WILLIAM McKENNA
*Chief Counsel*

KRYSTYNA BEDNARCZYK
*Assistant Chief Counsel, Federal Aviation Administration*

*Department of Transportation*

BRETT A. SHUMATE
*Assistant Attorney General*

STEVEN A. MYERS
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7212*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4820*

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION .......... 1

STATEMENT .......... 2

A. Statutory Background .......... 2

B. Factual And Procedural Background .......... 5

ARGUMENT .......... 8

The Court Should Dismiss The Petition For Review For Lack Of Jurisdiction .......... 8

CONCLUSION .......... 13

CERTIFICATE OF COMPLIANCE

## GLOSSARY

| | |
|---|---|
| Airport Authority | Metropolitan Nashville Airport Authority |
| FAA | Federal Aviation Administration |
| Nashville | Metropolitan Government of Nashville and Davidson County |

## INTRODUCTION

This case arises from a dispute between the Metropolitan Government of Nashville and Davidson County (Nashville) and the State of Tennessee over who has authority to appoint the board of the Metropolitan Nashville Airport Authority. The Federal Aviation Administration (FAA) has taken no position on that dispute. Nashville nevertheless filed a petition for review contending that FAA will eventually have a statutory obligation to determine the governance of the Airport Authority, that FAA is prohibited from doing so now by ongoing litigation in the U.S. District Court for the Middle District of Tennessee, and that FAA therefore must publicly state that it will not approve or accept a transfer of governance of the Airport Authority at least until the district-court litigation is concluded.

This Court lacks jurisdiction over the petition. Petitioner invokes a statute permitting direct review of orders issued by the FAA Administrator under certain statutory provisions, but that statute does not apply because FAA has not issued any order for petitioner to challenge or this Court to review. To the contrary, petitioner's claim is that FAA has *failed* to issue such an order. Such a claim is really a

request for mandamus under the All Writs Act, but even mandamus is unavailable because the order petitioner is seeking would not arise under one of the statutory provisions identified in the jurisdictional statute petitioner invokes.

The petition for review should therefore be dismissed for lack of jurisdiction.

## STATEMENT

### A. Statutory Background

The Federal Aviation Administration is charged with "encourag[ing] the development of civil aeronautics and safety of air commerce" in the United States. 49 U.S.C. § 40104(a). To further that mission, Congress has given FAA authority to award grant money to maintain a safe and efficient system of public-use airports. *Id.* § 47104(a); *see* 49 C.F.R. § 1.83(a) (delegating authority of the Secretary of Transportation to FAA). Such grants can be issued to fund airport development activities such as "constructing, repairing, or improving" an airport; acquiring or installing equipment; or acquiring land for future airport development. 49 U.S.C. § 47102(3).

When an airport's "sponsor"—that is, the public agency or private owner of an airport that submits the grant application, 49 U.S.C. § 47102(26)—proposes transferring responsibility for an airport to a new sponsor, FAA conducts a review to ensure that the proposed sponsor can assume all grant assurances and other federal obligations before it permits the transfer. *See* FAA, Order 5190.6C, *Airport Compliance Manual* § 6.7, at 6-8 to 6-16 (Feb. 20, 2026), https://perma.cc/K72S-T57J; Memorandum from Kevin C. Willis, Dir., Off. of Airport Compliance & Mgmt. Analysis, FAA, to Regional Directors and Regional Compliance Specialists (July 28, 2021), https://perma.cc/2RP3-LUB8; FAA, Order 5100.38D, Change 1, *Airport Improvement Program Handbook* § 2-9, at 2-20 to 2-21 (Feb. 26, 2019), https://perma.cc/SXB9-WUQA.

In the FAA Reauthorization Act of 2024, Congress provided for cases in which there is "a disputed change of airport sponsorship." Pub. L. No. 118-63, tit. VII, subtitle A, § 757, 138 Stat. 1025, 1285-1287. In such a case, the FAA Administrator "shall have the sole legal authority to approve any change in the sponsorship of, or operational responsibility for, the airport." *Id.* § 757(a)(1), 138 Stat. at 1285. The

Administrator "shall not approve any disputed change" of sponsorship "unless the Administrator receives—(A) written documentation from the airport sponsor of record consenting to the change … ; (B) notice of a final, non-reviewable judicial decision requiring such change; or (C) notice of a legally-binding agreement between the parties involved." *Id.* § 757(b)(1), 138 Stat. at 1286. In addition, the Administrator "shall independently determine whether the proposed sponsor or operator is able to satisfy Federal requirements for airport sponsorship or operation" and may impose such "terms and conditions" as the Administrator determines necessary to ensure that any change in airport sponsorship "is consistent with existing Federal law, regulations, existing grant assurances, and Federal land conveyance obligations." *Id.* § 757(c), 138 Stat. at 1286. Congress provided, however, that the Administrator "may not evaluate or approve a disputed change of airport sponsorship where a legal dispute is pending before a court of competent jurisdiction." *Id.* § 757(b)(2), 138 Stat. at 1286.

### B. Factual And Procedural Background

1. Nashville, Tennessee, is served by two primary airports: Nashville International Airport and John C. Tune Airport. Both are overseen by the Metropolitan Nashville Airport Authority. Prior to the state law at issue here, the Airport Authority's board of commissioners had been entirely appointed by Nashville officials.

In May 2026, Tennessee enacted a law that, effective July 1, "vacated and reconstituted" the boards of commissioners of metropolitan airport authorities throughout the State and provided for state officials to appoint a majority of the commissioners of such boards. 2026 Tenn. Pub. Act ch. 978, §§ 1, 2, 7. The day after the law's enactment, petitioner sent FAA a letter asserting that the state law would change "both governance and ownership of the" Airport Authority. Pet. Ex. 1, at 1-2. Nashville stated that it disputed the change of governance and ownership and requested that FAA notify the Chairman of the Airport Authority's Board of Commissioners that it would not recognize the change until the conditions set out in Section 757(b)(1) are satisfied. *Id.* at 2-3.

In June 2026, Nashville and the Airport Authority sued Tennessee officials over this dispute. Complaint, *Metropolitan Government of Nashville & Davidson County v. Lee*, No. 3:26-cv-793 (M.D. Tenn. June 10, 2026), Dkt. No. 1. The plaintiffs also moved for a preliminary injunction to prevent Tennessee from vacating or reconstituting the Airport Authority's board of commissioners until "the parties come to a legally binding agreement" or "until the FAA Administrator has approved any proposed governance change" pursuant to Section 757. Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction at 25, *Lee*, No. 3:26-cv-793 (June 10, 2026), Dkt. No. 3. The district court *sua sponte* stayed that suit pending resolution of the petition for review here. Order, *Lee*, No. 3:26-cv-793 (July 8, 2026), Dkt. No. 34. Nashville has moved to lift the stay. *See* Mot. to Lift Stay, *Lee*, No. 3:26-cv-793 (July 31, 2026), Dkt. No. 40.

In late June, Nashville sent FAA another letter "demand[ing]" that FAA "[c]onfirm in writing that the Tennessee legislation constitutes a 'disputed change of airport sponsorship' under Section 757(d)" and "[c]onfirm that no change in governance of the Airport sponsor may take effect" until the statutory conditions in Section

757(b)(1) are satisfied. Pet. Ex. 2, at 7. On June 30, Nashville filed a motion with FAA "to stay any action that FAA might otherwise undertake to approve, recognize, or otherwise permit" the transfer of governance to the State's newly appointed board of commissioners. Pet. Ex. 3, at 1. To date, FAA has neither taken a position on the governance of the Airport Authority nor otherwise acted on Nashville's administrative motion.

2. Nashville filed its petition for review in this Court on July 1, 2026. The petition alleges that "Section 757 imposes a mandatory duty on the FAA to state that it will not approve … a transfer [of governance]" for the Nashville airports until litigation in the Middle District of Tennessee concludes. Pet. 1. Petitioner asserts that "FAA has failed to issue the required statement and has effectively permitted the State of Tennessee to proceed toward assuming governance of the Airports," *id.*, and it seeks an order "[c]ompel[ling] the FAA to issue a statement that it will not approve of or accept the State of Tennessee's transfer of governance of the [Airport Authority] at least until the [Middle] District of Tennessee litigation is concluded," Pet. 11.

Petitioner moved for an emergency injunction, which this Court denied on July 27, 2026.

## ARGUMENT

### THE COURT SHOULD DISMISS THE PETITION FOR REVIEW FOR LACK OF JURISDICTION

Petitioner invokes the jurisdiction of this Court under 49 U.S.C. § 46110(a). *See* Pet. 1. That section provides that:

> a person disclosing a substantial interest in an order issued by the Secretary of Transportation (… or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (*l*) or (r) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit.

49 U.S.C. § 46110(a). The statute thus provides at least two prerequisites for invoking the jurisdiction of this Court: First, there must be "an order" issued by the FAA Administrator. Second, the order must be issued "in whole or in part under [Title 49, Subtitle VII, Part A], part B, or" 49 U.S.C. § 114(*l*) or (r). Petitioner cannot establish either of these prerequisites. Accordingly, the Court should dismiss the petition for review for lack of jurisdiction.

1. Petitioner does not challenge any order of FAA. Rather, petitioner seeks review of FAA's purportedly "unlawful failure to act, and constructive approval of" an alleged transfer of governance of the Nashville airports. Pet. 1. Neither a failure to act, nor a "constructive approval," *id.*, is an "order" of the FAA Administrator, 49 U.S.C. § 46110(a). Indeed, this Court has long distinguished between an agency order and an agency's failure to act for purposes of the Court's jurisdiction. *See Telecommunications Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 75-76 (D.C. Cir. 1984).

Petitioner may have intended to file its claim for unlawful failure to act as a petition for a writ of mandamus. *See TRAC*, 750 F.2d at 75-77. But that is not the action petitioner filed. In any event, this Court would lack jurisdiction over such a mandamus petition for the reasons explained below. *See infra* pp. 11-12.

2. Petitioner also cannot meet the second prerequisite for establishing jurisdiction under 49 U.S.C. § 46110(a) because even if FAA had issued an order under Section 757 of the FAA Reauthorization Act of 2024, such an order would not be issued "in whole or in part under [Title 49, Subtitle VII, Part A], part B, or [49 U.S.C. § 114(*l*) or

(r)]." 49 U.S.C. § 46110(a). That is because when Congress enacted Section 757, Congress did not choose to codify its provisions anywhere in the U.S. Code—let alone in Title 49, Subtitle VII, Part A, Part B, or § 114. *See* Pub. L. No. 118-63, § 757, 138 Stat. at 1285-1287.

Although Congress did not codify Section 757 in Title 49, the Office of the Law Revision Counsel of the U.S. House of Representatives chose to insert the provision as a statutory note to 49 U.S.C. § 47101. *See* Off. of the L. Revision Couns., U.S. House of Representatives, *About Classification of Laws to the United States Code*, https://perma.cc/5RN4-44DJ (explaining that the Office of the Law Revision Counsel "reviews every provision of every public law to determine whether it should go into the Code, and if so, where"). But the "decision to classify a freestanding provision" of public law, such as Section 757, as "a statutory note is an editorial judgment." *Id.* The Supreme Court has accordingly stated that where the "arrangement" of law "was made by a codifier without the approval of Congress, it should be given no weight." *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964) (quotation marks omitted); *cf. United States v. Ehmer*, 87 F.4th 1073, 1112 (9th Cir. 2023) (decision of the Office of the Law Revision Counsel to place enacted text

in a particular subchapter of a non-positive-law title was a "merely editorial addition[] made by a congressional office, and not any part of a statute enacted by Congress" and thus "entitled to no weight"). Indeed, assigning legal significance to a decision of an internal office of one House of Congress would plainly be unconstitutional; Congress's actions have legal effect only when they comply with the requirements of bicameralism and presentment. *See INS v. Chadha*, 462 U.S. 919, 951 (1983).

The placement of Section 757 as a statutory note to 49 U.S.C. § 47101 is thus irrelevant to this Court's jurisdiction: Although the principal text of § 47101 is itself in Title 49, Subtitle VII, Part B, Section 757 has not been placed there by Congress. Accordingly, an FAA order issued under Section 757 is not subject to direct review in this Court.

3. Because an FAA order issued under Section 757 is not subject to direct review in this Court, the Court would equally lack jurisdiction if it construed this petition as a request for mandamus. This Court has "exclusive jurisdiction over mandamus petitions" alleging agency action unreasonably withheld or delayed when a statute "commits review of

the relevant action to the courts of appeals." *In re Public Emps. for Env't Resp.*, 957 F.3d 267, 271 (D.C. Cir. 2020). In such a case, "the statutory commitment of review" of agency action, "read in conjunction with the All Writs Act," affords this Court jurisdiction. *TRAC*, 750 F.2d at 75. But "[i]f … the court does not and would not have jurisdiction to review the agency action sought by petitioners, it cannot bootstrap jurisdiction via the All Writs Act." *In re National Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022).

If the petition for review is construed as a mandamus petition, then petitioner is seeking an order compelling the FAA Administrator to issue an order under Section 757. But, as just explained, 49 U.S.C. § 46110(a) does not give this Court jurisdiction to directly review such an order, and the Court therefore also does not have jurisdiction to review a mandamus petition seeking such an order.

## CONCLUSION

The petition for review should be dismissed for lack of jurisdiction.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

STEVEN A. MYERS

*/s/ Joshua M. Koppel*
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7212*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4820*
*joshua.m.koppel@usdoj.gov*

*Of Counsel:*

GREGORY ZERZAN
*General Counsel*

CHARLES E. ENLOE
*Assistant General Counsel*

WILLIAM McKENNA
*Chief Counsel*

KRYSTYNA BEDNARCZYK
*Assistant Chief Counsel, Federal Aviation Administration*

*Department of Transportation*

September 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,279 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Joshua M. Koppel*
Joshua M. Koppel